OPINION OF THE COURT
Morrie Slifkin, J.
The issue is whether a public employer may reduce its employee’s working hours in response to that employee’s complaints to the employer, on behalf of other employees, about terms and conditions of employment. Respondent concluded that the Taylor Law (Civil Service Law § 200 et seq.) contained no prohibition against such retaliation because at the time the complaints were voiced, the employees were not seeking to form an employee organization or be represented by one. The particular facts and the conclusion reached by Public Employment Relations Board (PERB) make this an issue of first impression.
The facts, as found by PERB, are not in dispute. Petitioner Francine Rosen is a teacher at Dutchess Community College and at the college’s French School in Poughkeepsie, New York. The French School is operated by the college pursuant to a contract with the IBM Corporation. Although the faculty of the college is represented by a union, the faculty of the French School is not organized. It has previously been determined in these proceedings that Rosen is a public employee and that the college is a public employer within the meaning of Civil Service Law § 201 (6).
*629 In September of 1980, Rosen taught French to undergraduates at the college’s main campus as well as to the children of the French nationals employed by IBM who were attending the French School. During the fall semester, the teachers at the French School began to discuss their concerns about various aspects of their employment. Eventually, these teachers chose Rosen to voice these concerns to the associate dean responsible for the French School. She first met with this dean on May 7, 1981. The record discloses meetings and correspondence concerning Rosen’s continued attempt throughout 1982 at resolving the French School teachers’ concerns with the terms and conditions of employment.
In January of 1983, Rosen was informed that the college administration had reduced her teaching schedule by a four-hour course, thus reducing her income by $1,400. Rosen filed her charge with PERB claiming that the college reduced her course schedule with the purpose of interfering with, restraining, or coercing her and other French School faculty in the exercise of their protected statutory rights to form, join and participate in an employee organization of the employee’s own choosing, and that the college’s action was for the purpose of depriving the faculty of such rights. Rosen also alleged that the college intended to unlawfully interfere with the formation of an employee organization and that the college was discriminating against petitioner to discourage her from membership and participation in the activities of an employee organization, all in violation of Civil Service Law §§ 209-a and 202.
Initially, the administrative law judge dismissed petitioner’s charge on jurisdictional grounds. PERB reversed and remanded. On May 3, 1984, the administrative law judge dismissed the charge finding, inter alla, that the college had shown that it would have cut Rosen’s hours regardless of her complaints about the terms and conditions of employment of teachers at the French School.
Rosen filed objections and by decision dated September 5, 1984, PERB found that the Taylor Law does not protect the conduct engaged in by Rosen. However, in so concluding, PERB rejected the administrative law judge’s fact finding and found that the college reduced Rosen’s hours “at least in part because Rosen complained about the terms and conditions of employment at the French School. Moreover, the record shows that Rosen’s complaints were made with the knowledge and consent of some of the teachers at the French School after they had discussed their concerns among themselves.” However, PERB *630 concluded its fact finding with the remark that “there is no indication in the record that the teachers were seeking to form an employee organization or to be represented by such an organization.”
Based upon these facts, PERB determined that the college’s actions were not designed to frustrate any rights accorded to Rosen by the Taylor Law. This determination was, in turn, based upon PERB’s interpretation of Civil Service Law § 209-a (1) which, by reference to section 202, makes it an improper practice for a public employer to interfere with, restrain or coerce public employees or to discriminate against them because they seek to form, join or participate in an employee organization of their own choosing. Since there was no evidence that any of the French School teachers, including Rosen, were seeking to form, join or participate in such an organization, PERB was of the opinion that there was no interference with Taylor Law (§ 202) rights. Rosen’s argument that the teachers’ informal meeting was an assertion of section 202 rights and that judicial interpretation of the comparable provision in the National Labor Relations Act (NLRA; 29 USC § 151 et seq.) supports this argument was met by PERB with the counterargument that the particular NLRA language relied upon was specifically omitted from the Taylor Law, whereas many other provisions of the NLRA were incorporated into the Taylor Law. Additionally, noted PERB, the definition of an employee organization under the Taylor Law requires actual “organization” whereas the same term under the NLRA includes “any * * * employee representation committee or plan” (29 USC § 152 [5]).
Rosen has challenged PERB’s determination in this CPLR article 78 proceeding. On the return date of the petition, the parties were only prepared to proceed on the single procedural issue of whether the matter required transfer to the Appellate Division. Although the court found this bifurcation to be an unwarranted interference with control of its calendar, it agreed to the procedure adopted by the parties upon the representation that, if the court decided against transfer, the attorneys would submit briefs within two weeks of that decision. Inasmuch as petitioner accepted PERB’s findings of fact, the court held that only a matter of law remained for determination and that the article 78 proceeding need not be transferred pursuant to CPLR 7804 (g). In its decision-order dated December 5, 1984 and mailed to the parties that day, the court directed the exchange and filing of briefs on December 21,1984 and the exchange and filing of reply briefs on or before December 28, 1984, all in accordance with the prior representation of counsel assuring *631 promptness. Nevertheless, petitioner’s attorney with the consent of PERB requested, by letter of December 19, 1984, an extension of the respective dates to January 11, 1985 and January 18,1985. Recognizing that denial of this request would result only in further delay to the litigants, the court reluctantly agreed to it. Nevertheless, it must be pointed out that the conduct of counsel was totally inconsiderate and would be analogous to this court, sua sponte, adjourning motions over to another calendar because of a “heavy schedule”.
Turning to the substantive inquiry at hand, the court notes that the provisions of the Civil Service Law which are central to the problem are the following:
“§ 209-a. Improper employer practices; improper employee organization practices; application
“1. Improper employer practices. It shall be an improper practice for a public employer or its agents deliberately (a) to interfere with, restrain or coerce public employees in the exercise of their rights guaranteed in section two hundred two for the purpose of depriving them of such rights; (b) to dominate or interfere with the formation or administration of any employee organization for the purpose of depriving them of such rights; (c) to discriminate against any employee for the purpose of encouraging or discouraging membership in, or participation in the activities of, any employee organization”.
“§ 202. Right of organization
“Public employees shall have the right to form, join and participate in, or to refrain from forming, joining, or participating in, any employee organization of their own choosing.”
“§ 201. Definitions
“As used in this article * * *
“4. The term ‘terms and conditions of employment’ means salaries, wages, hours, agency shop fee deduction and other terms and conditions of employment provided”.
The scope of review of a PERB determination is narrowly limited and this limitation has been specifically defined by the Court of Appeals: “The scope of our review of PERB’s interpretation of the Civil Service Law is a limited one. Simply stated, unless the board’s determination was ‘affected by an error of law’ or was ‘arbitrary and capricious or an abuse of discretion’, we will not interfere (CPLR 7803, subd. 3). For, ‘[s]o long as PERB’s interpretation is legally permissible and so long as there is no breach of constitutional rights and protections, the courts have no power to substitute another interpretation’ (Matter of *632 West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 50). As the agency charged with implementing the fundamental policies of the Taylor Law, the board is presumed to have developed an expertise and judgment that requires us to accept its construction if not unreasonable (see Matter of Fisher [Levine], 36 NY2d 146, 149-150; Matter of West Irondequoit Teachers Assn. v Helsby, supra, pp 50-51; Matter of Howard v Wyman, 28 NY2d 434, 437-438; Civil Service Law, §§ 200, 205).” (Matter of Incorporated Vil. of Lynbrook v New York State Public Employment Relations Bd., 48 NY2d 398, 404-405.)
The provision in the National Labor Relations Act which is paralleled to Civil Service Law § 202 states the following: “Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection” (NLRA § 7, 29 USC § 157; emphasis supplied.)
Since so much of the NLRA § 7 language had been incorporated by section 202, PERB concluded that the omission of the emphasized language “evidences an intention not to afford protection to the concerted activities of employees that fall short of an attempt to form, join, participate in * * * an employee organization.” PERB was of the opinion that this conclusion was buttressed by the difference between the Taylor Law and NLRA definitions of “employee organization”, the former covering only actual organizations while the latter encompassed representation committees and plans.
There is apparently no legislative history explaining the distinction. The conclusion of PERB that the “omission” was intentional is inescapable. However, the inference drawn by PERB therefrom, that the Legislature intended to exclude activity preliminary to actual organization, is not ineluctable. If, in fact, there had been no Federal statute to compare the subsequent Taylor Law to, then the court is certain that the language of section 202 would be construed to protect plaintiff’s activity in this situation.
The intent with which statutes are enacted “is to be collected from the context, from the occasion and necessity of the law, from the mischief felt and the objects and the remedy in view.” (1 Kent, Commentaries, at 462). While the background of the Taylor Law is necessarily complex and multifaceted, it is obvious that some of the mischief recognized by its framers revolved around the distinction between employment in the public sector *633 and employment in the private sector. In fact, recognition of this distinction has been imposed by the Legislature upon the administrators and judiciary: “In applying this section, fundamental distinctions between private and public employment shall be recognized” (Civil Service Law § 209-a [3]).
There are many distinctions between private and public employment. An obvious one is the public policy represented by the Taylor Law prohibition against strikes. On the other end of the scale is the equally fundamental distinction that public employees, absent controls imposed by statute, are susceptible to arbitrary interference with their employment by the public managers whereas the whimsy of private employers is tempered by the workings of the marketplace and by the ability of employees to strike. Other factors not present in the public sector include justification based on proprietary considerations and the necessity of entrepreneurial determinations. This over-all fundamental distinction has been codified in the Taylor Law in broad terms protecting the employees’ right to unionize and to bargain collectively. The underlying assumption is that there is a strength in numbers and unity of action which will provide the protection necessary. However, if the interpretation offered by PERB and hereunder review holds sway, then the entire fabric of the Taylor Law unravels. If employees have the right to form a union, yet can be fired or coerced by their employer upon rumblings that qualitatively fall short of PERB’s standard, then the right to organize is illusory.
“The right to self-organization depends in some measure on the ability of employees to learn the advantages of self-organizatian from others.” (Labor Bd. v Babcock & Wilcox Co., 351 US 105, 113.) Is a demonstration of individual courage on behalf of other employees any less instructive of the worth of collective action than the sterile, initial formal meeting in furtherance of unionization? Can someone reasonably hold that an individual’s action on behalf of the welfare of others is not cloaked with protection merely because there was no outward manifestation of union activity? Moreover, if persons not yet organized see what the effect of their discussions have had on the hapless petitioner, will they be encouraged to engage in the very activity which the Taylor Law seeks to protect? Or will PERB’s determination have a chilling effect upon practice of that protected activity? The answers are obvious.
Based on the foregoing, this court finds that the employer’s actions against petitioner interfered with, restrained and coerced petitioner and the other teachers in the exercise of their *634 section 202 rights. To the extent respondent’s determination is contrary, it is hereby vacated. The employer committed improper employer practices contrary to the statute. The judgment to be entered hereon shall, inter alla, direct PERB to issue an order reinstating petitioner to her course load and provide back pay for the classes unlawfully taken from her.